is E & T Skyline v. Talisman Casualty. Thank you. I am going to be discussing the E&T Skyline. Your Honors, here the appellant respectfully asked this court to consider a simple issue. Namely, was it error for the district court to determine that the March 8th, 2019 letter served to modify or amend the subcontract between E&T and non-party NYR? It's respectfully proffered that it was error. It's clear that the district court utilized the March 8th, 2019 letter as its sole impetus for declaring E&T in default and in so doing eliminated the liability of defendant here. It's also clear that in so doing, the district court then improperly imposed an obligation upon E&T as it related to installation of the windows at the upper floors of the project. However, as your Honors are aware, the termination of non-party NYR was based here on its failure to deliver the windows to the project. Here we have a 40-story, 90,000 square foot building, 32 floors of which were already completed and open for delivery and storage and accommodation of such windows, yet the district court solely focused on floors 33 through 39 in its decision. Well, the March 8th letter, I mean just focusing on what it said, provided that the window installation schedule was conditional on making the upper floors of the project free from obstruction. And I know you say we shouldn't be looking at that condition, but Judge Rakoff points out that it was only when your client moved to amend the judgment that this argument was made for the first time. Well, your Honor, respectfully, the letter actually indicates that the schedule is subject to impact based on a series of factors. Of the 16 items in that letter related to schedule, your Honors, only three of them have to do with installation. Furthermore, the last sentence on page one of that letter indicates that it's a request that the upper floors be cleared of any alleged obstructions. And in so doing, what they're then utilizing as its argument for failure to install the windows are these alleged obstructions. However, first and foremost, the letter does not serve as a modification of the subcontract. The modifications and amendment portion of the subcontract are clear and unambiguous. It needs to be a writing, agreed and acknowledged, and executed or signed by both parties. But your argument is you win either way, even if it were part of the contract. Well, even if it did form a basis for part of the contract, your Honors, it solely relates to installation, not delivery or storage. It's clear here, both elicited through testimony and by a preponderance of the evidence that was established at trial, NYR was terminated for a failure to deliver the windows. These were windows that ENT had paid for directly to the supplier, following prior defaults by NYR. ENT requested on four separate occasions the status of the window delivery and where they were in shipment, all to no avail. They ignored 14 days of requests, at a certain point begging for a status update. It actually was turned out that ENT found out through a third party logistics company that these windows had been delivered two weeks earlier, that they were placed in a secret undisclosed location by NYR, and it was never- Is there anything wrong with that, the fact that they stored them themselves? I mean, they stored them because they didn't believe that they had access to the work space, to the area. And there's plenty of documentary evidence to that effect. Respectfully, Your Honor, we would answer that with a two-pronged response. Number one, we believe they stored them in secret and undisclosed because they were planning to walk off the job. And we did submit, as evidence at trial, an email chain between the defendant as well as non-party NYR that indicated as much. In fact, through conversations, NYR had indicated to a representative of the bonding company that they were planning on walking off the job. That essentially, if they didn't get paid one of the requisitions that was outstanding, they were simply going to pull off the job. And in fact, the defendant then responded to that email with grave concern, saying in fact, and this is Plaintiff's Exhibit 150, saying in fact, we're grossly concerned that you had indicated you're going to walk off this job. You're bringing up all of these issues, some of which are actually NYR issues, rather than an owner responsibility. So we believe that they were holding these, quote unquote, in hostage, Your Honors. And the second response would be, they weren't able to even install these windows, even if it was a wide open football field, if you will, Your Honors, right? If you get up to floor 33, it's wide open, right, 3,000 square feet of unfettered space. By a preponderance of the evidence at trial, it was established that each and every window receptor that was previously installed by non-party NYR required removal and replacement. Some of the floors themselves that had alleged debris on them were NYR's own materials, and we established that at trial as well, Your Honors. So what you have here is a situation where they're saying, I can't install these windows because there's stuff on the floor. Some of which is their own stuff. Second of all, I can't install these windows, yet I wouldn't be able to anyway, because I've improperly performed work for how many months in advance? I've been in default throughout this entire project. I had to terminate one of my suppliers, and then it turns out a year later, I find out it's because of a payment issue. They then go- Apart from your fallback argument here, it seems to me that you've got a situation where this was, as the district court found, a precondition to the applicability of the insurance. And so, and it wasn't met. And as far as the letter, the March letter is concerned, it seems to me that you treated it as part of the contract, and it was a reference point in the discussions that you had that spring about when the job was, what the deadlines were. Well, quite frankly, Your Honor, respectfully, what happens is if a party is in default, as you know, on a contract, there's a demand made then, how are you going to get the project back on track? They then submit this proposed recovery schedule. It was never treated as part of the contract, Your Honor. Well, then why did you say that they materially breached by violating the recovery schedule? How can they materially be breached if it's not part of the contract? Your Honor, of the seven items that are quoted in those notices of default, only one of them references the recovery schedule. But that still says, you materially breached in part by violating the recovery schedule. Doesn't that definitionally say the recovery schedule is part of the contract, and therefore could form a basis for breach? What we believe, Your Honor, is that a portion of that schedule that relates to delivery to the job site of the windows, again, they failed to even order the windows at that point. So some of the March 19th letter is, or the March letter, some of it is incorporated into the contract and some of it isn't? No, that's not what we're saying, Your Honor. What we're saying is what the district court did is they focused on the portion of the- They materially breached the subcontract because you, quote, failed to meet the deadline in the recovery schedule. How can a failure to meet a requirement constitute a material breach if the requirement is not incorporated into the contract? And what we're saying, Your Honor, is it was part of a litany of defaults that were alleged against non-parties. But it was one of the defaults. It was one of them that was included in that letter, Your Honor, yes. All right, thank you. However, even if the March 8th, 2019 letter did become part of the contract, the letter solely related to installation, not delivery and storage. As Your Honor had pointed out, one of the prerequisites or conditions for the bonding company coming to the table is that the owner is not in default of the contract. The contract here and the obligations related to the owner was a provision of suitable storage areas for these windows. There were 32 floors available for storage. Well, didn't Judge Rakoff find that obstructions prevented installation or delivery period, I mean prevented, yeah, NYR from even delivering the custom windows? You're just saying that's a clearly erroneous factual finding. What we're also saying, though, Your Honor, is not only was that clearly erroneous, but he's only focusing on floors 33 through 39. He never mentions the lower floors of the project. Again, a 40 story building that's 90,000 square feet is give or take more than 2,000 square feet of floor, Your Honor, right? It's simple mathematics. The average single family home in America is 2,000 square feet. So picture, if you will, each floor of this building being a single family home. There's 32 stories of building where they could have placed and stored these windows. In fact, even following default and termination, ENT is begging the defendant here, just tell me where the windows are. To date, the windows still have never been provided to the appellant here. And in fact, they clearly state to the surety company, just coordinate delivery. We will receive them. We will distribute them. We kept the hoist in operation. We converted an interior corridor used as a material elevator. We had laborers on site. In fact, NYR's obligations in the contract are very clear here. They had an obligation to coordinate routing, to coordinate logistics, to coordinate shipping and transportation. They never attended the on-site job meetings. The site safety manager at the project never found that the site was cluttered or that housekeeping was an issue. There were never violations issued by the New York City Department of Buildings. There was never a housekeeping summons that was issued. And in fact, what we just demonstrated through the photographs was that there were plenty of areas here for storage. In fact, even at the upper floors, there were areas for storage. PX 69, our exhibit at page 52, shows a wide open area at one of the upper floors. Now, Mr. McCabe, you've reserved some rebuttal time. Do you want to use it now or wait and do your rebuttal? If your honors have any further questions, I could certainly answer them now if you prefer me, but I would like to still reserve some rebuttal time. Good, we'll hear from your adversary. Thank you. Good morning. May it please the court. Michael F. Cuso for the Appley Talisman Casualty Insurance Company. Mr. McCabe and I seem to be arguing different cases. A few responses to the comments I just heard. I don't know of any evidence that New York Renaissance was going to walk off the job. I don't recall that being in the findings of fact. And indeed, New York Renaissance said on the day of termination, July 19th, 2019, that it wanted to complete the job. That is not argued in the briefs, and that gratuitously came up out of the blue. With respect to the location of the windows, it's my understanding the windows are still partially in Red Hook, Brooklyn. And another batch is still in Avenue, New Jersey, many years after the fact. With respect to the March 8th- What's the status of the project right now? Are they still waiting to complete those floors? Are they still waiting? No, it's my understanding- Are they still relevant? I'm sorry, Your Honor. Are the windows still relevant? I don't believe so, no. It is my understanding that the project has been completed and the units have been sold. Yeah, okay. The March 8th 2019 letter was in response to a directive by ENT Skyline to provide a recovery schedule. The project was behind schedule for a variety of reasons. The March 8th letter is just a recovery schedule, but the recovery schedule is subject to certain conditions. That the upper floors, that they have access and unobstructed access to the upper floors. So as early as March 8th, New York Renaissance, the subcontractor here, was concerned about the situation on the upper floors. They voiced the same concerns in April of 2019, in May of 2019, in June of 2019, and in July of 2019. They could not deliver the windows and install the windows because of the instructions on the upper floor. Now, they're trying to frame this, appellate's trying to frame this as a contract dispute. Or an erroneous interpretation of the contract. They're doing that to, I think, avoid the deferential standard of review that is set forth in the case law. In any event, wasn't the March 18th letter, or March 8th letter, 2019 referenced and accepted by the course of conduct of your adversary? Throughout, you know, I believe so. After the letter was written, whether or not it was technically part of the contract or not, it was treated as part of the contract. Well, again, it's my understanding that appellate's argument is that the March 8th letter imposed certain additional obligations over and above what's in the contract. The contract requires that they provide suitable place for storage of these windows. And the common law, implicit in every construction- You're saying it doesn't matter, that that letter's not significant. Pardon me, Your Honor? You win whether or not the letter's in the case or not. I believe so, yes. Yeah. I think everyone is saying that. What about the lower floors? Why couldn't the windows be delivered there? These are, there was 80 plus custom windows. And 11 rectangular windows that would be installed on the upper floors. Floors 33 through 42. These were not toaster ovens. These were 10 foot, 400 to 600 pound custom windows. These could not be moved around easily. And as I state in the brief, there's an email from ENT on the day of termination. Deliver the windows to the designated floors. Now, Mr. Prevalescu, the principal of New York Renaissance, sat 60 feet from the lower court judge, testified that he could not deliver or install the windows. Mr. Excuse me. Nick Tarano, I believe his name is, testified likewise. The lower court found that testimony credible, and found it credible in light of the photographs and the documents that were admitted into evidence. That, I think, needs to be respected. The lower court also found Kevin Colbert, one of the principals of ENT Skyline. His testimony not to be respected. And I believe that those findings need to be respected, and they're certainly not clearly erroneous in my view, so. But as my colleague said, basically your argument is that whether we treat the asserted modification as a modification or just a delivery schedule letter. Doesn't really matter that the district court's findings, in fact, were show a contract violation either way because of the terms of the underlying contract. Correct. The, look, the bond says, it's only invoked when liability only arises if there is no owner default. Here, there was a default under the contract, and as I said earlier, implicit in every construction contract is a fundamental obligation for site access that was breached here by ENT Skyline. Judge Rakoff determined that NYR had no incentive to keep the windows. That they're custom windows and it had to pay for storage. And so for that, and that was a factor suggesting that it really couldn't deliver the windows in Judge Rakoff's fact finding. But if the parties were in a dispute, wouldn't the, could there be an incentive to keep the windows until you've worked out that dispute at least? I don't know how to answer that. There was, the windows, as far as I know, are still partially in Avenue, New Jersey. Partially in Red Hook, Brooklyn. There's been no discussions. They're useless now, aren't they? Pardon me? You're saying the construction project was completed. That's my understanding, yes. So the windows are useless now because they were custom windows. I mean- They're custom and they're- Unless somebody's going to build an identical building somewhere. Unlikely. I, unless the court has anything further, I have no, nothing further. Thank you. Your honors, while I will rebut my adversary's arguments. First and foremost, I wanted to address the last comment by the panel. Yes, if there was a dispute, your honor, and in fact, if I said to you, in exchange for a waiver and release of all prior alleged default, I will deliver your windows, that is certainly an incentive for me to secret them in an undisclosed location. If I say to you, yes, I messed up, mea culpa, but why don't we eliminate all of those prior defaults? My liquidated damages, any cost for repair, cost for replacement, etc., I'll give you the windows. However, to, and we would respectfully offer that that is, in fact, what took place. But to respond to my adversary, when he indicates first that there was no evidence that NYO was going to walk off the job. Again, it's plaintiff's exhibit 150, it's page 403 of the transcript, that cross-examination of Mr. Pervalescu begins. And what the district court then instead was focused on the syntax and the difference between posturing and irony. And there's a comment by the district court judge that in the English language, it's certainly a point of contention, does posturing and irony mean the same thing? We had basically pointed out to the witness on the stand that the surety did express some grave concern about walking off the job. And his response was, yes, I did express that if you were going to be in my corner here, I might as well just pack up and walk off the job. When we pointed that out and we cross-examined, the district court judge, again, with all due respect to him, just tried to compare the difference between posturing and irony. In terms of a directive, Plaintiff's Exhibit 43 at page two indicates that there's a concern that no recovery schedule was presented. In fact, how do I deal with the shop drawings, the engineering reviews, fabrication times, delivery times? We had to pay for these windows directly based on their improper default. However, my adversary and the district court, again, solely focuses on the upper floors of the project here. They want to simultaneously deliver and install. They can't do that because of their own deficiencies. You can't deliver this window to floor 38 and install it on the same day because I got to take out every single receptor that was improperly previously installed. As it concerns the contract, the district court was very clear in their conclusions of law, Your Honor, that as it was not, the court rejects ENT's factual assertion. The court concludes that because ENT failed to make the upper floors of the project site available for installation, ENT was in default of its obligation. There is no obligation in the subcontract respect, Your Honor, to make the floors available for installation. If I do something incorrectly, if I'm rebuilding your kitchen, Your Honors, and I need to put the cabinets in the kitchen, but I've previously misaligned or previously improperly installed the precondition to the cabinet, I then can't blame you when I can't put the cabinets in. Thank you both, and we will take the matter under advisement. Thank you, Your Honor.